Alyson M. Weiss (AW-8474)
John A. Piskora (JP-1224)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000
*Attorneys for Plaintiff Bank of America, N.A.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUDGE JONES

10 CV 991

-----------------------------------------------------------X
                                                           :
BANK OF AMERICA, N.A., AS                                  :
SUCCESSOR IN INTEREST TO MERRILL                           :
LYNCH BANK USA,                                            :
                                                           :
                Plaintiff,                                 :
                                                           :   Index No.:
        -against-                                          :
                                                           :   **COMPLAINT**
FIRST LOOK SPV LLC and FIRST LOOK                          :
STUDIOS, INC.,                                             :
                                                           :
                Defendants.                                :
                                                           :
-----------------------------------------------------------X



RECEIVED FEB - 8 2010 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff Bank of America, N.A. ("BANA"), as successor in interest to Merrill Lynch Bank USA ("Merrill Lynch"), by and through its attorneys, Loeb & Loeb LLP, for its Complaint against Defendants First Look SPV LLC ("First Look SPV") and First Look Studios, Inc. ("First Look Studios" or "Servicer", and together with First Look SPV, "First Look"), alleges and avers as follows:

**NATURE OF THE ACTION**

1.      Plaintiff BANA brings this action against defendants because of defendants' breach of a $46.5 million obligation now due and owing to BANA. Defendants' numerous material breaches of the below-described loan entitles BANA to the relief sought herein.

2.  Defendant First Look SPV has failed to comply for over a year with virtually all of its obligations under that certain Amended and Restated Credit and Security Agreement, dated as of September 18, 2007 (as amended and supplemented, the "Credit Agreement"; attached hereto as Exhibit 1), pursuant to which Merrill Lynch provided over $48 million to enable First Look SPV to purchase certain motion picture film rights which constitute BANA's collateral (such collateral, including all other collateral pledged under the Credit Agreement, the "Collateral"). After Merrill Lynch gave written notice to First Look SPV of numerous Events of Default under the Credit Agreement and terminated its Commitments[1] thereunder to provide further funding, the Servicer, as "Sales and Servicing Agent" under a related Sales Agency and Servicing Agreement (the "Servicing Agreement"; attached hereto as Exhibit 2), misappropriated and wrongly diverted a stream of revenue constituting the Collateral. Such diversion of funds has continued unabated since October 2008.

3.  BANA (through the collateral agent) has commenced foreclosure proceedings under Article 9 of the New York Uniform Commercial Code in an effort to foreclose upon the Collateral. In connection therewith, BANA has requested that First Look SPV comply with its obligations under the Credit Agreement to deliver all documents and financial data concerning the Collateral, but First Look SPV has refused to turn over the required documents.

## THE PARTIES

4.  Plaintiff BANA is a National Banking Association organized under the laws of the United States, with its corporate headquarters and designated main office located in Charlotte, North Carolina.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Credit Agreement or Servicing Agreement (as hereinafter defined), as appropriate.

5. Upon information and belief, First Look SPV is a Delaware limited liability company, with its principal place of business in Los Angeles, California.

6. Upon information and belief, First Look Studios is a Delaware corporation, with its principal place of business in Los Angeles, California.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. Jurisdiction and venue are also proper before this Court pursuant to the parties' contractual arrangement, including but not limited to Section 8.10 of the Servicing Agreement, whereby each of First Look SPV (as "Purchaser") and First Look Studios (as "Sales and Servicing Agent") "irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any New York State Court or Federal Court of the United States of America sitting in New York City ... in any action or proceeding arising out of or relating to this Agreement or the other Fundamental Documents [a defined term which includes the Credit Agreement], and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal Court."

9. Independently, venue in this district is appropriate because Defendants First Look SPV and First Look Studios transact business in New York and derive substantial revenue from goods or services provided in New York, including by way of the Credit Agreement. Plaintiff BANA maintains offices in New York, New York and the events and/or omissions which gave rise to the causes of action arose in New York, New York.

## BACKGROUND

10. On or about September 18, 2007, Merrill Lynch, as Administrative Agent and as a Lender thereunder, entered into the Credit Agreement with, among others, Defendant First Look SPV, which amended and restated an earlier credit agreement between the parties dated June 14, 2006.

11. Prior to the date hereof, Merrill Lynch merged into BANA, and thus BANA became the successor in interest to Merrill Lynch by operation of law. As such, BANA succeeded to all rights of Merrill Lynch under the Credit Agreement and the other Fundamental Documents and is now the Administrative Agent and sole Lender under the Credit Agreement.

12. Pursuant to the Credit Agreement, Merrill Lynch (as "Lender") agreed to loan certain funds, and First Look SPV (as "Borrower") agreed to borrow said funds, in accordance with the specific terms and conditions expressly set forth in the Credit Agreement.

13. Repayment of the loans made pursuant to the Credit Agreement was secured by First Look SPV's grant of a security interest in the Collateral, which includes but is not limited to the rights and interests held by First Look SPV in a library of films (the "Film Library").

14. In accordance with its obligations under the Credit Agreement, Merrill Lynch initially loaned First Look SPV the principal amount of $16,992,408.00 and made additional loans thereafter.

15. As of the date hereof, the amount currently due and owing by First Look SPV to Merrill Lynch, including applicable interest exceeds $46.5 million.

16. Pursuant to Section 8 of the Credit Agreement, upon the occurrence and continuance of any specified "Event of Default," Merrill Lynch (in its capacity as Administrative Agent under the Credit Agreement) was entitled to (a) terminate the funding commitments under

the Credit Agreement; and (b) declare all amounts due under the Credit Agreement to be immediately due and payable without presentment, demand, protest, notice of acceleration or any other notice.

The Initial Events of Default

17.     Events of Default under the Credit Agreement have occurred and are continuing.

18.     An Event of Default has occurred pursuant to Section 8(c) of the Credit Agreement as a result of First Look SPV's failure, as required under Section 6.1(a) of the Credit Agreement, to deliver within 120 days after the end of the fiscal year ending December 31, 2007 "an unqualified report and opinion" of an independent public accountant with respect to First Look SPV's audited balance sheet and income statements. The report and opinion of First Look SPV's independent public accountants for the fiscal year ending December 31, 2007 included a going concern qualification, indicating that First Look SPV's financial condition was so precarious that it might not be able to continue as a going concern.

19.     An Event of Default also has occurred and is continuing pursuant to Section 8(i) of the Credit Agreement as a result of numerous Sales and Servicing Agent Defaults. A Sales and Servicing Agent Default has occurred and is continuing under clause (a) of the definition thereof in the Servicing Agreement arising from the failure of the Servicer to deposit Gross Receipts into the Obligor Deposit Account when due.

20.     A separate and independent Event of Default has occurred pursuant to Section 8(i) of the Credit Agreement as a result of a Sales and Servicing Agent Default under clause (b) of the definition of that term arising from the failure of the Servicer to deliver an unqualified report and opinion of independent public accountants with respect to its audited balance sheet and

income statements for the fiscal year ending December 31, 2007, as it was required to do pursuant to Section 5.1 of the Servicing Agreement.

21.     A separate and independent Event of Default has occurred pursuant to Section 8(i) of the Credit Agreement as a result of a Sales and Servicing Agent Default under clause (e) of the definition thereof, arising from the failure of the Servicer to timely pay principal and/or interest on the 7% Senior Secured Convertible Debenture, dated as of March 20, 2007, issued by the Servicer to PFLM, LLC. Upon information and belief, the aggregate principal amount due pursuant to the 7% Senior Secured Convertible Debenture was in excess of $100,000.00 at the time of the default.

22.     Section 11.8 of the Credit Agreement provides that "[n]o failure on the part of ... any Lender to exercise, and no delay in exercising, any right, power or remedy hereunder, under the Notes or any other Fundamental Document shall operate as a waiver thereof."

23.     Further, Section 11.9(a) of the Credit Agreement specifically provides that "[n]o modification, amendment or waiver of any provision of this Credit Agreement ... shall in any event be effective unless same shall be in writing and signed by the Required Lenders."

24.     Neither BANA, nor its predecessor Merrill Lynch, as the sole Lender under the Credit Agreement, ever waived any of the foregoing Events of Default (such Events of Default, the "Initial Events of Default").

25.     Based upon the occurrence of the foregoing Initial Events of Default, on September 17, 2008, Merrill Lynch (acting as Administrative Agent under the Credit Agreement) gave written notice to First Look of the foregoing Initial Events of Default and terminated Merrill Lynch's funding commitments under the Credit Agreement.

26. In addition, based upon the occurrence of the foregoing Initial Events of Default, on January 30, 2009, Merrill Lynch (acting as Administrative Agent under the Credit Agreement) declared all amounts due to Merrill Lynch under the Credit Agreement to be immediately due and payable.

Additional Events of Default

27. Following the September 17, 2008 notice to First Look SPV of the foregoing Initial Events of Default, and in response thereto, First Look SPV verbally represented to Merrill Lynch that its security interest in the Collateral was, contrary to the appraised value, in fact worth significantly and materially less.

28. Specifically, although First Look SPV represented and reported to Merrill Lynch that its security interest in the Film Library was worth over $50 million, later First Look SPV admitted that it believed that the Film Library could only be sold for approximately $20 million.

29. First Look SPV failed to provide Merrill Lynch with proper and adequate notice of the foregoing material deterioration of the value of the Collateral, as required under the Credit Agreement.

30. In its October 2008 "Payment Date Report," First Look SPV certified that the value of the Film Library was over $50 million when, in fact, First Look SPV believed that the value of the Film Library was only approximately $20 million.

31. Such financial report representation, which was wrongly certified as true and correct by First Look SPV's Executive Vice President of Finance, Courtney Colman, was materially false and misleading.

32. Events of Default have thus occurred pursuant to Sections 8(a), 8(c) (in particular, the failure to give notice of material events pursuant to Section 6.4(a)(ii), (iii), (iv) and (vii) of

the Credit Agreement) and 8(i) of the Credit Agreement arising from First Look SPV's and the Servicer's failure to disclose the foregoing material change in value of the Collateral.

33. Events of Default under the Credit Agreement also occurred based upon First Look SPV's misrepresentations as to the eligibility of certain receivables (i.e., Sony funds) and/or wrongful inclusion of certain funds as eligible Collateral. The foregoing constitute Events of Default pursuant to Sections 8(a) and 8(c) of the Credit Agreement (in particular, the failure to give notice of material events pursuant to Sections 6.4(a)(ii), (iii), (iv) and (vii) of the Credit Agreement).

34. By letter dated November 4, 2008, counsel for First Look confirmed that First Look refused and continued to refuse to deposit Gross Receipts when due.

35. Upon information and belief, Servicer misappropriated and diverted such Gross Receipts for its own use and/or for the use of First Look SPV, which constitutes a Sales and Servicing Agent Default and thus an Event of Default pursuant to Section 8(i) of the Credit Agreement.

36. Servicer failed to give Merrill Lynch adequate notice of its diversion of Gross Receipts, as required pursuant to Section 5.6 of the Servicing Agreement, which constituted a further Sales and Servicing Agent Default under clause (b) of the definition thereof in the Servicing Agreement, and a further Event of Default pursuant to Section 8(i) of the Credit Agreement.

37. On November 12, 2008, Merrill Lynch (acting as Administrative Agent under the Credit Agreement), by its counsel, gave written notice to First Look of the foregoing additional Events of Default (the "Additional Events of Default") that came to light after Merrill Lynch gave notice of the Initial Events of Default.

38. Based upon the occurrence of the foregoing Additional Events of Default, on January 30, 2009, Merrill Lynch (acting as Administrative Agent under the Credit Agreement) declared all amounts due to Merrill Lynch under the Credit Agreement to be immediately due and payable.

Further Events of Default

39. In addition to the Initial Events of Default and the Additional Events of Default, Merrill Lynch provided notice to First Look SPV of further Events of Default on February 3, 2009.

40. Specifically, First Look SPV failed to deliver a Payment Date Report on or before December 18, 2008, as required pursuant to Section 6.1(f) of the Credit Agreement, and has failed to deliver any such reports thereafter. The failure to deliver the Payment Date Reports constitutes an additional Event of Default pursuant to Section 8(c) of the Credit Agreement.

41. In addition, First Look SPV disclosed, for the first time, that it had for some time wrongly included in its calculation of the Borrowing Base certain receivables that First Look SPV claims it has no right to retain. Rather, First Look SPV asserted that these receivables are in fact owed to third parties. Insofar as such disclosures are true, and First Look SPV had no right to retain certain receivables because they had to be paid over to third parties, the inclusion of such receivables in statements calculating the Borrowing Base constitutes an additional Event of Default pursuant to Section 8(a) of the Credit Agreement.

42. Representatives of First Look also disclosed that First Look Studios had wrongly informed Merrill Lynch that it had "sold" several motion pictures to First Look SPV that were not, in fact, the property of First Look Studios in the first place and thus were not owned by First Look Studios "free and clear of all Liens and rights of others" (as required by the Sale and

Distribution Agreement, dated as of June 14, 2006). Insofar as such disclosures are true, and First Look Studios wrongly "sold" to First Look SPV several motion pictures that First Look Studios did not actually own, such "sales" breached Section 4.12(a) of the Sale and Distribution Agreement, and constitute an additional Event of Default pursuant to Section 8(d) of the Credit Agreement.

43.   First Look SPV also failed to comply with its obligation to make a monthly interest payment that was due on or before December 22, 2008. The failure to pay monthly interest when due, following the expiration of any applicable cure period, constitutes an additional Event of Default pursuant to Section 8(b) of the Credit Agreement. Thereafter, First Look SPV has failed to make any monthly interest payments.

44.   In addition to the above Events of Default that were set forth in the February 3, 2009 letter, further Events of Default have occurred and are continuing. Specifically, an Event of Default has occurred pursuant to Section 8(c) of the Credit Agreement as a result of First Look SPV's failure, as required under Section 6.1(a) of the Credit Agreement, to deliver within 120 days after the end of the fiscal year ending December 31, 2008, its audited consolidated balance sheet and other financial reporting that First Look is required to provide annually pursuant to Section 6.1(a) of the Credit Agreement.

45.   An Event of Default has occurred pursuant to Section 8(c) of the Credit Agreement as a result of First Look SPV's failure, as required under Section 6.1(b) of the Credit Agreement, to deliver within 60 days after the end of each of the first three quarterly monthly periods for the fiscal year of 2009 the unaudited consolidated balance sheet of First Look SPV and other financial reporting that First Look SPV is required to provide pursuant to Section 6.1(b) of the Credit Agreement.

46. An Event of Default has occurred pursuant to Section 8(i) of the Credit Agreement as a result of a Sales and Servicing Agent Default under clause (b) of the definition of that term arising from the failure of the Servicer to deliver within 120 days after the end of the fiscal year ending December 31, 2008, its audited consolidated balance sheet and other financial reporting that Servicer is required to provide pursuant to Section 5.1(a) of the Credit Agreement.

47. An Event of Default has occurred pursuant to Section 8(i) of the Credit Agreement as a result of a Sales and Servicing Agent Default under clause (b) of the definition of that term arising from the failure of the Servicer to deliver no later than 45 days after the end of each of the first three quarterly periods of the fiscal year 2009, the unaudited consolidated balance sheet of Servicer and other financial reporting that Servicer is required to provide pursuant to Section 5.1(b) of the Servicing Agreement.

48. First Look SPV is required to deliver an annual Appraisal, and an interim Appraisal to the extent requested by the Administrative Agent, as provided in the definition of the term "Eligible Library Amount" in the Credit Agreement (the "Appraisal Covenant"). First Look SPV failed to deliver an Appraisal in 2009 and an interim Appraisal requested by the Administrative Agent in 2008. First Look SPV was and continues to be aware of its breach of the Appraisal Covenant, which breach constitutes an Event of Default pursuant to Section 8(d) of the Credit Agreement.

49. Pursuant to Section 7.12 of the Credit Agreement, First Look SPV is prohibited from opening or maintaining any bank account other than (a) accounts maintained at the Collateral Agent, (b) accounts maintained at a Lender or other financial institutions both (i) approved by the Administrative Agent (not to be unreasonably withheld) and (ii) listed on Schedule V to the Credit Agreement, and as to which the Collateral Agent and Administrative

Agent shall have received notice for which an Account Control Agreement has been delivered to the Administrative Agent. Upon information and belief, in breach of its obligations under Section 7.12, First Look SPV has opened and maintains at least one bank account into which it has diverted the income stream of the Collateral. Such knowing breach constitutes an Event of Default under Section 8(d) of the Credit Agreement.

50. Pursuant to Section 6.14 of the Credit Agreement, First Look SPV covenanted to ensure that on any date of determination, the Borrower Liquidity Ratio exceeds 125%. Upon information and belief, the Borrower Liquidity Ratio does not exceed 125% and has not exceeded such ratio for a significant period. Fist Look SPV's failure to ensure that the Borrower Liquidity Ratio exceeds 125% constitutes an Event of Default under Section 8(c) of the Credit Agreement.

51. Pursuant to Section 6.1(d) of the Credit Agreement, First Look SPV was required to deliver within twenty (20) days of the close of each calendar month, film ultimates received from the Servicer, as more specifically set forth in Section 6.1(d), which First Look SPV has failed to do since at least 2008. Such breach constitutes an Event of Default under Section 8(c) of the Credit Agreement.

52. In accordance with Section 6.(1)(e) of the Credit Agreement, First Look SPV was required to deliver as soon as practicable, but in any event within five (5) Business Days of any Material Change, ultimates with respect to each Eligible Ultimates Title affected by such change revised to take such Material Change into account. Upon information and belief, a Material Change occurred and is continuing, yet in breach of the Credit Agreement First Look SPV failed to deliver utlimtates with respect to each Eligible Ultimates Title affected by such change. Such breach constitutes an Event of Default under Section 8(c) of the Credit Agreement.

53.     Neither BANA nor Merrill Lynch has ever waived any of the foregoing Events of Default.

The Foreclosure Proceedings

54.     In light of the numerous Events of Default that remain under the Credit Agreement, BANA determined to avail itself of its rights by commencing foreclosure proceedings in accordance with Article 9 of the New York Commercial Code. In connection therewith, by letter dated December 22, 2009, and in accordance with Section 9.4 of the Credit Agreement, BANA demanded that First Look SPV provide all documents within its possession, custody and control concerning the Collateral, including all financial information pertaining thereto. Despite due demand therefor, First Look SPV has failed to deliver a substantial majority of the documents in its possession, custody or control concerning the Collateral.

**FIRST CLAIM FOR RELIEF**
**(Breach of the Credit Agreement)**

55.     BANA repeats and realleges the allegations set forth in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56.     The Credit Agreement is a valid, binding, and enforceable contract.

57.     Merrill Lynch and BANA have each complied with each and all of their obligations pursuant to the Credit Agreement.

58.     All conditions precedent to suit have been satisfied, waived, or excused.

59.     First Look SPV has breached the Credit Agreement by, among other things, failing to pay BANA all principal and applicable interest due and owing pursuant to the Credit Agreement.

60. BANA has been damaged by First Look SPV's breach of the Credit Agreement in an amount to be proven at trial, but believed to be in excess of $46.5 million, plus fees, expenses and applicable pre-judgment and post-judgment interest.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

61. BANA repeats and realleges each of the allegations made in paragraphs 1 through 60 of this Complaint as if fully stated herein.

62. BANA and/or its predecessor entity Merrill Lynch has forwarded funds, with applicable interest, in excess of $46.5 million to First Look SPV.

63. As a result of First Look SPV's failure and refusal to repay BANA, BANA has been damaged and First Look SPV has been unjustly enriched and a corresponding benefit has been conferred upon First Look SPV by Merrill Lynch in an amount to be proven at trial, but believed to be in excess of $46.5 million plus applicable pre-judgment and post-judgment interest.

64. First Look SPV owes a duty, in equity and good conscience, to make full restitution to BANA.

## THIRD CLAIM FOR RELIEF
### (Misappropriation/Unjust Enrichment)

65. BANA repeats and realleges each of the allegations made in paragraphs 1 through 64 of this Complaint as if fully stated herein.

66. Under the Servicing Agreement, First Look Studios was obligated to deposit into the Obligor Deposit Account all Gross Receipts derived from the Collateral.

67. First Look Studios intentionally refused to deposit all Gross Receipts into the Obligor Deposit Account.

68.  Rather, upon information and belief, First Look Studios misappropriated and diverted such funds for its own use and/or the use of its corporate affiliate First Look SPV.

69.  As a result of First Look Studios's failure and refusal to deposit all Gross Receipts into the Obligor Deposit Account, BANA has been damaged and First Look SPV and/or First Look Studios has or have been unjustly enriched, and a corresponding benefit has been conferred upon First Look SPV and or First Look Studios by BANA and/or Merrill Lynch in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
(Accounting)

70.  BANA repeats and realleges each of the allegations made in paragraphs 1 through 69 of this Complaint as if fully stated herein.

71.  The Collateral pledged to BANA (through its collateral agent) by First Look SPV includes all Gross Receipts that First Look Studios was obligated to deposit into the Obligor Deposit Account under the Servicing Agreement.

72.  As set forth herein, First Look Studios has misappropriated and diverted Gross Receipts to its own account and/or the account of its corporate affiliate First Look SPV.

73.  BANA does not have access to the records and information necessary to ascertain the precise amount of Gross Receipts and/or other Collateral that were misappropriated, diverted, and/or received by First Look Studios and/or First Look SPV, and/or the purported use and disposition of those monies and/or other assets.

74.  As Sales and Servicing Agent, First Look Studios has the information regarding the use and disposition of such Gross Receipts and/or other Collateral assets.

75. By reason of the foregoing, an accounting is required to determine, <u>inter alia</u>, the amounts paid and/or delivered to First Look, and/or otherwise misappropriated and diverted by First Look, as well as the disposition and status of such monies and other Collateral assets.

### FIFTH CLAIM FOR RELIEF
(Constructive Trust)

76. BANA repeats and realleges each of the allegations made in paragraphs 1 through 75 of this Complaint as if fully stated herein.

77. As set forth herein, First Look Studios has misappropriated and diverted Gross Receipts to its own account and/or the account of its corporate affiliate First Look SPV.

78. Defendants' unlawful conduct has caused Gross Receipts and/or other collateral assets to be wrongfully diverted to First Looks' accounts.

79. First Look Studios had notice and knowledge (a) of the foregoing Events of Default under the Credit Agreement; (b) that BANA had terminated its funding Commitments under the Credit Agreement; (c) that the repayment of all sums owed by First Look SPV to BANA were accelerated based upon such Events of Default; and (d) that the Collateral, including all Gross Receipts, secured the loans made by BANA and/or Merrill Lynch to First Look SPV.

80. Accordingly, all Gross Receipts and/or other Collateral assets held by First Look SPV and/or First Look Studios are held by them in constructive trust for BANA.

### SIXTH CLAIM FOR RELIEF
(Injunction)

81. BANA repeats and realleges each of the allegations made in paragraphs 1 through 80 of this Complaint as if fully stated herein.

82.     Under the Servicing Agreement, First Look Studios covenanted that it would deposit all Gross Receipts into the Obligor Deposit Account when due.

83.     First Look Studios has breached its covenant under the Servicing Agreement by diverting the deposit of Gross Receipts, which was for the benefit of BANA and/or Merrill Lynch and their respective interests in the Collateral.

84.     First Look Studios diverted said Gross receipts with full notice and knowledge (a) of the foregoing Events of Default under the Credit Agreement; (b) that BANA had terminated its funding Commitments under the Credit Agreement; (c) that the repayment of all sums owed by First Look SPV to Merrill Lynch and/or BANA were accelerated based upon such Events of Default; and (d) that the Collateral, including all Gross Receipts, secured the loans made by BANA to First Look SPV.

85.     In so diverting Gross Receipts, First Look Studios has deprived BANA of its ability to collect the outstanding debt in full.

86.     Accordingly, BANA has no adequate remedy at law.

87.     Further irreparable injury to BANA is imminent as, absent injunctive relief, and given Defendants' past acts and pattern of conduct, First Look Studios and First Look SPV will continue diverting the Gross Receipts and further depriving BANA of its Collateral and the ability to collect the outstanding debt in full.

88.     By reason of the foregoing, BANA is entitled to the entry of an Order immediately and permanently enjoining First Look Studios and First Look SPV from diverting Gross Receipts and directing that any and all such Gross Receipts be paid directly to BANA and/or to an account opened and maintained for the sole benefit of BANA.

## SEVENTH CLAIM FOR RELIEF
(Appointment of Receiver)

89. BANA repeats and realleges each of the allegations made in paragraphs 1 through 88 of this Complaint as if fully stated herein.

90. Pursuant to Section 9.4 of the Credit Agreement, First Look SPV expressly agreed that a receiver may be appointed without notice, to take possession of all or any portion of the Collateral and to exercise such powers as the Court shall confer upon the receiver.

91. As alleged above, the appointment of a receiver is appropriate under the Credit Agreement and applicable law as, absent the appointment of a receiver, there is a danger that the Collateral, including but not limited to the films and the Gross Receipts, will be removed, or lost, materially injured or destroyed.

92. BANA is entitled to a receiver based on the diversion of assets and Collateral, the other Events of Default, pursuant to New York law and under the express terms of the loan documents.

WHEREFORE, Plaintiff BANA demands judgment against Defendants First Look SPV LLC and First Look Studios as follows:

(a) Damages against First Look SPV in an amount to be proven at trial, but believed to be in excess of $46.5 million;

(b) A full and immediate accounting of the Collateral, including all wrongly diverted and misappropriated Gross Receipts;

(c) The imposition of a constructive trust and equitable lien over all wrongly diverted and misappropriated Gross Receipts and/or other Collateral assets, for the ultimate benefit of BANA;

(d) Disgorgement of all wrongly diverted and misappropriated Gross Receipts and/or other Collateral assets, and full restitution;

(e)  The entry of an Order preliminarily and permanently enjoining First Look from diverting Gross Receipts and/or other Collateral assets, and directing First Look to pay all such Gross Receipts directly to Plaintiff and/or to an account opened and maintained for the sole benefit of Plaintiff;

(f)  Appointment of a receiver over First Look's assets;

(g)  Applicable pre-judgment and post-judgment interest;

(h)  Costs and disbursements, including attorneys' fees, incurred in this action; and

(i)  Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       February 8, 2010

LOEB & LOEB LLP

By: _____
Alyson M. Weiss (AW-8474)
John A. Piskora (JP-1224)
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

*Attorneys for Plaintiff
Bank of America, N.A.*

(e)  The entry of an Order preliminarily and permanently enjoining First Look from diverting Gross Receipts and/or other Collateral assets, and directing First Look to pay all such Gross Receipts directly to Plaintiff and/or to an account opened and maintained for the sole benefit of Plaintiff;

(f)  Appointment of a receiver over First Look's assets;

(g)  Applicable pre-judgment and post-judgment interest;

(h)  Costs and disbursements, including attorneys' fees, incurred in this action; and

(i)  Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       February 8, 2010

LOEB & LOEB LLP

By: _____
Alyson M. Weiss (AW-8474)
John A. Piskora (JP-1224)
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

*Attorneys for Plaintiff
Bank of America, N.A.*